(19 App. Div. 238.)

HOLZMANN v. MONELL.

(Supreme Court, Appellate Division, First Department.   June 25, 1897.)

1. NEGLIGENCE—DANGEROUS APPLIANCES—PROVINCE OF JURY.
    The plaintiff, in an action for personal injuries caused by the fall of a dumb-waiter, proved that a month before the accident the rope by which the dumb-waiter was raised and lowered was seen to be much worn, that this condition was reported to the janitor of the apartment house where it was situated, and that after the accident the rope was found to be broken. *Held*, that this was sufficient to require the submission of the question of negligence to the jury, and the plaintiff was not required to meet any presumption that the janitor performed his duty by supplying a new rope.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    It appeared that when the dumb-waiter fell the plaintiff was leaning into the shaft, and also that when raising the dumb-waiter to deliver goods to a tenant, as the plaintiff was doing, it was necessary to lean into the shaft in order to see whether the waiter had reached the proper point. *Held* that, upon the evidence of the plaintiff, it was a question for the jury whether

the plaintiff, when the accident happened, had so finished this investigation that his leaning into the shaft was contributory negligence.

3. MOTION FOR LEAVE TO GO TO JURY—EXCEPTIONS TO RULINGS.

A motion for leave to go to the jury is one of the proceedings in the trial, and the correctness of a ruling upon it is sufficiently raised by an exception, which should be made to appear in a case and exceptions; no order upon such motion being requisite or proper.

Appeal from trial term.

Action by Charles F. Holzmann against Ralph Monell. From a judgment entered on a nonsuit, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

Frank H. Smiley, for appellant.
Thomas C. T. Crain, for respondent.

RUMSEY, J. The plaintiff sought to recover damages for personal injuries inflicted upon him by the falling of a dumb-waiter in an apartment house owned by the defendant. No evidence was given on the part of the defendant. The evidence adduced by the plaintiff tended to show that the defendant was the owner of an apartment house at 158 West Fifteenth street in the city of New York. In that house and for the use of the tenants there had been furnished by the defendant a dumb-waiter, by means of which groceries and other articles could be hoisted from the ground to the apartments occupied by the different tenants on various floors. This dumb-waiter ran in a shaft. It was hung by a rope passing over a pulley at the top of the building, and at the other end of the rope was attached a weight, which acted as a counterpoise, running down one side of the shaft. Another rope, which ran over a pulley at the top of the shaft, was fastened to the machine, and hung down at the side of the shaft. By pulling upon this latter rope the machine could be raised and lowered at will. The plaintiff went to the dumb-waiter to deliver a can of milk to a tenant living upon one of the upper floors, and put the can upon the waiter, and raised it. To enable him to see whether the dumb-waiter with its load had reached the floor for which it was intended, it was necessary that he should place himself partly in the shaft. As he stood partly within the shaft, after having placed the waiter at the proper floor by pulling upon the rope, the elevator fell, and he received the injuries complained of, to recover for which he brought this action. The complaint was dismissed upon the trial.

It was made to appear, on the part of the plaintiff, by one of the tenants of the building, that a month before the dumb-waiter fell the witness had examined the rope by means of which it was suspended; that he found it very much worn, and one or two of the strands frayed out; and that he called the attention of the janitor to the defective rope. It does not appear that any new rope was furnished; but it does appear, by the testimony of the same witness, that after he heard of the accident he looked at the rope, and found it had been broken. The defendant insists that, when it was made to appear to the janitor that the rope was defective, it was his duty to replace it; that the presumption is that he performed his duty, and that the

burden lay upon the plaintiff to give testimony to remove that presumption; and that, because of his failure to give that testimony, he did not prove that the defendant was guilty of negligence. With this contention we do not agree. When the plaintiff had given the testimony tending to show that the rope was defective, and followed that up by other testimony that the accident was caused by the breaking of a rope, which, if sufficient, would have held the load put upon the dumb-waiter, he had made all the proof that was necessary to charge the defendant with a liability for the accident, because he had made it appear that there was a defect in the rope, and that the defendant's janitor had been notified of the rope's defective condition so long before the accident that there was an opportunity to repair it, and that it should have been repaired. Whether it was repaired or not was not within the knowledge of the plaintiff. The proof having been made that the rope was defective, the presumption was that the condition of affairs thus made to appear continued, unless evidence were offered tending to show that the defective rope had been replaced. In the absence of that evidence, the plaintiff had the right to rely upon the testimony ·which was given; and the question was for the jury whether the accident was caused by the defective rope.

It is claimed, too, by the defendant, that the plaintiff was guilty of contributory negligence in being within the shaft at the time the dumb-waiter fell. It is quite true that there was no necessity for the plaintiff to stand inside of the shaft, except so long as was necessary to enable him to see that the dumb-waiter had reached the floor at which he·intended to put it. It appears that while he was doing that it was necessary that he should be sufficiently within the shaft either to see what floor the dumb-waiter had reached or to hear the voice of the tenant advising him that the proper place had been reached. Of course, when he had accomplished that, it was his duty to get out of the shaft. But whether or not he had so far finished that, when the rope broke and the dumb-waiter fell upon him, it was negligent for him to remain any longer inside the shaft, was clearly a question for the jury. There was no evidence except that of the plaintiff upon that point. He says that in holding the rope he had to bend in and look up to see if the customer was there; that at the time of holding the rope he leaned forward a little, no doubt, after Mrs. Trimmer (the tenant) had said "All right," having both of his hands on the rope, which necessitated his leaning forward a little. He further says:

"When I got the elevator up, Mrs. Trimmer did not call out that it was high enough. She told me to send it up higher. * * * Q. When you sent it up higher, did she tell you to stop? A. I heard nothing at all. As soon as I pulled it up, I got struck by the dumb-waiter. * * * You would have to get under it [the dumb-waiter] when you call to a customer. * * * In order to get the elevator up at the proper height, it was necessary for me to look in there. She [the tenant] is the one who told me it was up the proper height. I could tell it was the proper height when she had the door open. If she did not open the door, I could not see her. I could not have told. I could not have told if I had looked up. I had to depend upon her being there, or else her calling down. I did not look up to see if she took the can of milk off or not. I was looking at some woodwork down below, and was not paying any attention to seeing what she was doing upstairs. I did not know when the dumb-waiter came down, except as it struck me."

There was a question, upon this testimony, whether the plaintiff, at the time the dumb-waiter fell, had just been advised by the tenant that it was high enough, and it struck him before he had time to withdraw from the shaft, or whether he hesitated a little after he had been advised that it fell, and cast his eyes down below, and was hurt while he was so doing. Either view might have been taken by the jury; and upon this appeal we are bound to assume that they would have taken that view of it which was most favorable to the plaintiff upon the evidence, and that is that he had just finished placing the dumb-waiter at the floor where it was intended to go, and that it fell while he was still practically in the act of doing so. That being so, we agree with the learned trial judge that the question of contributory negligence was for the jury. But as we disagree with him upon the question of negligence, and think that, contrary to his ruling, there was a question for the jury as to the negligence of the defendant, we feel bound to reverse this judgment.

It appears from the case that the plaintiff, after the trial, entered an order denying his motion for leave to go to the jury; and an appeal is also taken from that order. The entry of such an order as that was not necessary. A motion for leave to go to the jury in a case is one of the proceedings in the trial. The correctness of a ruling upon it is sufficiently raised by an exception, and what was done in that regard must always be made to appear by the case and exceptions. Here it does not appear, by the case and exceptions, that any leave was asked by the plaintiff to go to the jury, or that any ruling was made by the court upon that subject. If the plaintiff's right to review this judgment depended upon the denial of his application for leave to go to the jury,—which was not made during the trial of the case, but was made afterwards, if at all, and was not excepted to, but was appealed from,—he would have no standing in this court. The question for review here is presented by the exception to the granting of a motion for a nonsuit, and not otherwise. The appeal from the order denying the motion for leave to go to the jury must therefore be dismissed.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.